UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X
PIETRO PERICH

      Petitioner,             <u>MEMORANDUM AND ORDER</u>

   -against-             Civil Action No.
                              CV-05-2942(DGT)

WILLIAM MAZZUCA, Superintendent
of Fishkill Correctional
Facility,

      Respondent.
------------------------------X

Trager, J:

    <u>Pro se</u> petitioner Pietro Perich ("Perich" or "petitioner")
brings the instant petition for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254, alleging that he was deprived of (1) his
right to a direct appeal and (2) his right to effective
assistance of counsel.  Respondent now moves to dismiss Perich's
petition as time-barred under the one-year statute of limitations
provided in the Anti-Terrorism and Effective Death Penalty Act of
1996 ("AEDPA"), 28 U.S.C. § 2244(d).  For the following reasons,
respondent's motion is denied.[1]

---

   [1] The caption originally listed William Lape, Superintendent
of  Marcy Correctional Facility, as the respondent.  The caption
has been edited to reflect Perich's transfer to the Fishkill
Correctional Facility because the proper respondent in a habeas
corpus petition is the officer having custody of the applicant.
See Rule 2(a) of the Rules Governing Section 2254 Cases in the
United States District Courts.

# Background

## (1)

On December 6, 2001, after a jury trial, Perich was
convicted in absentia in Queens County Supreme Court of Criminal
Possession of a Weapon in the Second Degree (New York Penal Law
("NYPL") § 265.03[2]); Criminal Possession of a Weapon in the
Fourth Degree (NYPL § 265.01); and Resisting Arrest (NYPL §
205.30) for menacing a prostitute with a gun.  (Pet. 1; Aff. of
Sharon Y. Brodt in Support of Resp't's Mot. to Dismiss ¶ 3,
hereinafter "Brodt Aff.".)  Perich was acquitted of the more
serious charges of Robbery in the First Degree and Attempted
Assault in the Second Degree.  (Tr. 22, Jan. 29, 2002.)

Perich had absconded during his trial, was not present for
the announcement of the verdict on December 6, 2001, and failed
to appear at a sentencing hearing scheduled for January 2, 2002,
and another on January 29, 2002.  (Brodt Aff. ¶ 4.)  At the
January 29, 2002 hearing, Perich's counsel informed presiding
Justice Randall T. Eng that Perich called his office the day
before and indicated he wanted to turn himself in. (Tr. 5, Jan.
29, 2002.)  Justice Eng declined to impose a sentence at the
January 29 hearing and adjourned the matter for two days to allow
the defendant another opportunity to appear in the matter.  (Tr.

12, Jan. 29, 2002.) The defendant communicated with his attorney by telephone again on January 30, but did not appear in court on January 31. (Tr. 14, Jan 31, 2002.)

At the January 31 hearing, Perich was found "willfully absent," (Tr. 15, Jan. 31, 2002), and was sentenced *in* *absentia* to a term of eight years.[2] (Tr. 32-33, Jan. 31, 2002.) The court did not say anything to Perich's attorney about petitioner's right to appeal. (Tr. 33, Jan. 31, 2002.)

In February 2002, Perich was apprehended and later collapsed in his cell.[3] (Brodt Aff. ¶ 6.) At a hearing on February 15, 2002, Perich appeared "vacant" and "unresponsive," and the court

_____

[2] Perich was sentenced to a determinate term of eight years for Criminal Possession of a Weapon in the Second Degree, a term of one year for the Criminal Possession of a Weapon in the Fourth Degree and one year for Resisting Arrest, all to run concurrently. (Tr. 32-33, Jan. 31, 2002; Tr. 21, May 13, 2002).

[3] According to the prosecutor, after Perich was apprehended upon his return to New York and brought to the police precinct, he "had phone calls made on his behalf to get all of his affairs in order to rid himself of the thousands of dollars that he had on his person, to have his friends come to the precinct and make sure that all of his belongings were taken care of. He then sat there in cell, looked around the detective's squad before generally lowering himself to the ground and feigning what could only be described as a seizure." (Tr. 24, May 23, 2002.) Justice Eng described Perich's conduct as "the spectacle that he engaged in before this Court upon his return from custody" and said he "hadn't seen a single word of medical documentation as to what that was about other than physicians' reporting to the Court that he was malingering, he was faking, that there was no physiological basis for his apparent symptoms." (Tr. 12, May 23, 2002.)

3

ordered an Article 730 examination to determine his fitness to proceed. (Tr., Feb. 15, 2002.)  The court deferred arraignment on the new bail jumping indictment "pending receipt of the results of the 730 examin[ation]" and explained that the 730 examination "will refer to both indictments."  There is no evidence in the record that the court or Perich's attorney informed Perich of his right to appeal at this hearing.

On May 13, 2002, Perich appeared at a hearing addressing "open matters" including the sentencing under "indictment 3422 of 2000," which included the original robbery, assault, weapon possession and resisting arrest charges.  (Tr. 2, May 13, 2002).  After finding Perich fit to proceed (Tr. 2-3, May 13, 2002), Justice Eng heard from the prosecution.  Asking whether she was "being heard with respect to the sentence that your Honor has already passed or . . . with respect to another issue," the prosecutor presented arguments pertinent to the sentencing for the original convictions.  (Tr. 4, May 13, 2002.)  The prosecutor then asked whether she should be heard on the bail jumping issue, and Justice Eng responded, "Right now I am concerned with the open sentence."  (Tr. 7, May 13, 2002.)

The prosecutor objected that the sentence for the original convictions had already been passed and that the court, therefore, lacked jurisdiction to alter it.  As such, the

4

prosecution argued that "the only remedy this defendant has in terms of jurisdiction is under 440.20."[4] (Tr. 7-8, May 13, 2002.) Justice Eng stated that the prosecutor was addressing an issue "that has not ripened yet" and that he was giving her "an opportunity to be heard as much as you wish to be heard." (Tr. 8, May 13, 2002.)

Perich's counsel then requested that the court consider reducing Perich's sentence, arguing that the verdict on the possession of a weapon in the second degree be set aside as inconsistent with the evidence and repugnant to the verdict because Perich was acquitted of the attempted assault and robbery charges and, therefore, could not have been using the gun unlawfully. (Tr. 14-15, May 13, 2002.) The prosecutor again objected that the motion to set aside the defendant's sentence be

---

[4] "A judgment is comprised of a conviction and the sentence imposed thereon and is completed by imposition and entry of the sentence." CPL § 1.20(15). CPL § 440.20(1) provides, in part, that "[a]t any time <u>after</u> judgment, the court in which the judgment was entered may, upon motion of the defendant, set aside sentencing upon that it was unauthorized, illegally imposed or otherwise invalid as a matter of law." <u>Id.</u> (emphasis added). CPL § 440.30(1) states, in part, that a "motion to vacate a judgment pursuant to section 440.10 and a motion to set aside a sentence pursuant to section 440.20 <u>must be made in writing</u> and upon reasonable notice to the people." <u>Id.</u> (emphasis added). Conversely, under CPL § 330.30(1), "[a]t any time after rendition of a verdict of guilty and <u>before</u> sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof" on enumerated grounds. <u>Id.</u> (emphasis added). CPL § 330.40 provides that motions under § 330.30(1) "need not be in writing."

made in writing under CPL § 440.20. (Tr. 16, May 13, 2002.)

Justice Eng responded: "In reviewing the law under 330.40, a

motion to set aside the verdict based upon a ground specified in

subdivision one of section 330.30, it need not be in writing.

That's the law." (Tr. 16, May 13, 2002.)

After hearing from Perich himself, Justice Eng determined

that the sentence he originally announced on January 31 was

correct and ordered the sentence executed. (Tr. 20-21, May 13,

2002.) The court clerk then advised Perich of his right to

appeal the verdict within 30 days and his right to assigned

counsel upon proof of inability to pay. (Tr. 21-22, May 13,

2002.)


## (2)

Perich submitted a letter dated May 14, 2002 purporting to

file a notice of appeal to the Appellate Division, Second

Department, and requesting leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u>,

claiming that although he was able to retain counsel at trial, he

was now indigent having no income while in prison. (Notice of

Appeal and Request for Poor Person Relief, May 14, 2002,

hereinafter "Pet.'s Ex. E.")[5] Respondent opposed Perich's

---

[5] There appears to be some discrepancy over the timing of the
filing of the notice of appeal. Perich claims he and his trial
attorney both filed notices of appeal on May 14, 2002. (Pet.'s

request to proceed in forma pauperis, but did not oppose the notice of appeal as untimely. (Brodt Aff. ¶ 9; Ex. F.)

On August 23, the Appellate Division, Second Department, treating the motion as one for permission to file a late notice of appeal under CPL § 460.30, as well as for in forma pauperis relief, denied the motion in its entirety. People v. Perich, App. Div., 2d Dep't, Nos. 02-04705, 02-07366, Aug. 23, 2002, Index No. 3422/00. The court: 1) denied the branch of the motion for leave to file a late notice of appeal, 2) dismissed, "on the court's own motion, the appeal from the execution of sentence," and 3) ordered that the remaining branches of the motion be "denied as academic." Id.

On September 19, 2002, Perich, through different retained counsel, filed a motion to reargue the denial of permission to file a late notice of appeal, which respondent opposed. (Mot. for Reargument for Permission to File Late Notice of Appeal, Sept. 19, 2002; Aff. in Op. to Def.'s Mot. to Reargue, Oct. 18,

_____

Mem. of Law, June 7, 2005, at 2.) Respondent states that Perich's trial counsel did not file the notice of appeal until May 29, 2002 (Brodt Aff. ¶ 8) and that Perich did not file the letter requesting in forma pauperis relief until June 13, 2002 (Brodt Aff. ¶ 9). However, respondent's memorandum of law concedes that the motion to file a late notice of appeal and motion seeking poor person relief was pending from May 14, 2002 until August 23, 2002. (Resp't's Mem. of Law, at 15.) In any event, the date of filing is not determinative of the instant motion.

2002.)  On November 7, 2002, the Second Department denied the

motion.  People v. Perich, App. Div., 2d Dep't, Nos. 02-04705,

02-07366, Nov. 7, 2002, Index No. 3422/00.

In a motion dated February 3, 2003,[6] Perich, through a third

retained counsel, moved for an order recognizing the timeliness

of his initial notice of appeal filed May 14, 2002, or,

alternatively, permitting him to file a late notice of appeal.

Respondent opposed that motion on the grounds that it was

actually a motion to reargue the Second Department's order of

August 23, and as such, should be deemed untimely.  (Brodt Aff.

¶¶ 13-15.)  As it had in its opposition to the first motion to

reargue, respondent also contended that the petitioner's motion

was meritless.  (Brodt Aff. ¶¶ 16.)  On March 12, 2003, the

Appellate Division denied this third motion.[7]  Brodt Aff. ¶ 17;

Pet.'s Mem. of Law, June 7, 2005, at 2.)

In a letter dated April 23, 2003, Perich sought leave to

appeal to the New York Court of Appeals from the three orders of

---

[6] Respondent's affirmation mistakenly states that this motion
was filed on February 23, 2003.  (Brodt Aff. ¶ 13.)  Petitioner's
exhibits indicate, and respondent's accompanying memorandum of
law acknowledges, that the motion was actually filed on February
3, 2003.  (Resp't's Mem. of Law, Aug. 23, 2006, at 15; Pet's Mem.
of Law, June 7, 2005, at 2.)

[7] Because the issue is not determinative of the present
motion, and because respondent concedes that the second motion to
reargue was "properly filed," (Resp't's Mem. of Law, at 15), the
timeliness of the second motion to reargue will not be addressed.

the Appellate Division dated August 23, 2002, November 7, 2002
and March 12, 2003. (Brodt Aff. ¶ 18.) Respondent opposed the
application on the ground that the orders were not appealable.
(Brodt Aff. ¶ 18.) On July 18, 2003, the Court of Appeals,
without opinion, denied leave to appeal as to the August 23, 2002
order and dismissed the leave to appeal motions of March 12 and
November 7, 2003 orders. People v. Perich, 100 N.Y.2d 585, 764
N.Y.S.2d 396, 793 N.E.2d 488 (2003) (Rosenblatt, J.) (Table).

On January 23, 2004, Perich moved for a writ of error coram
nobis in the Appellate Division on the ground that his trial
attorney was ineffective for failing to timely file a notice of
appeal on his behalf. (Brodt Aff. ¶ 19.) Respondent argued that
the relief Perich sought was not cognizable on a state coram
nobis claim. (Brodt Aff. ¶ 20.) On February 14, 2005, the
Second Department denied the writ, stating that the "appellant
has failed to establish that he was denied effective assistance
of appellate counsel." People v. Perich, 15 A.D.3d 505, 789
N.Y.S.2d 435 (2d Dep't 2005).

On March 18, 2005, petitioner filed a letter seeking leave
to appeal the Appellate Division's February 14 order. The Court
of Appeals dismissed the application on May 6, 2005. People v.
Perich, 4 N.Y.3d 889, 798 N.Y.S.2d 734 (2005) (Read, J.) (Table).
Finally, petitioner filed the instant petition for a writ of

habeas corpus on May 31, 2005.

Respondent now moves to dismiss the petition as time-barred under AEDPA's one-year statute of limitations. 28 U.S.C. § 2244(d)(1). Respondent argues that petitioner's conviction became final on March 2, 2002, more than three years before the instant petition was filed, and that even when days from this period during which "properly filed" post-conviction motions were "pending" under 28 U.S.C. § 2244(d)(2) are subtracted, petitioner is still unable to come within the one-year deadline.

**Discussion**

**(1)**

**AEDPA Statute of Limitations Overview**

AEDPA provides a one-year statute of limitations for filing an application for a writ of habeas corpus. The statute of limitations begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by

the Supreme Court and made retroactively applicable
to cases on collateral review; or
(D) the date on which the factual predicate of the
claim or claims presented could have been
discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

However, in calculating the one-year period, "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted."  28 U.S.C. § 2244(d)(2).

Thus, whether AEDPA's one-year statute of limitations bars Perich's claim requires a two-step determination of first, which date begins the limitations period under § 2244(d)(1), and second, how many days during which any "properly filed" applications for post-conviction or other collateral review were "pending" tolled the limitations period under § 2244(d)(2).  In order to meet the statute of limitations, the total number of days that elapsed from the date determined to trigger the statute of limitations under step one until the filing of the instant petition, subtracted by the total amount of "tolled" days calculated under step two, must be equal to or less than one year, or 365 days.

### Determining the Proper "Triggering" Provision

**a.  28 U.S.C. § 2244(d)(1)**

Respondent argues that § 2244(d)(1), which begins the statute of limitations on the date "the judgment became final by . . . the expiration of time for seeking" direct review, governs Perich's petition.  Perich's conviction became final on March 2, 2002, thirty days after the court first announced the sentence on January 31, 2002.  Under New York Criminal Procedure Law ("CPL") § 460.10(1)(a), "a party seeking to appeal from a judgment or a sentence . . . must, within thirty days after imposition of the sentence . . . file" a written notice of appeal.  Thus, respondent argues, and the Second Department seems to have found, that Perich's sentence was "imposed" on January 31, triggering the 30 days in which to file an appeal under CPL § 460.10(1)(a).  See People v. Perich, App. Div., 2d Dep't, Nos. 02-04705, 02-07366, Aug. 23, 2002, Index No. 3422/00.

The Second Department's order cites People v. DeVillar, 264 A.D.2d 528, 529, 695 N.Y.S.2d 294, 294 (2d Dep't 1999).  In DeVillar, the court dismissed an appeal from a purported judgment rendered almost six years after sentence had been imposed for the same conviction because the purported judgment was "nothing more than a proceeding to cause the judgment rendered [almost six

years prior] to be brought to execution." Id. (citing People v. Crawford, 239 A.D.2d 515, 659 N.Y.S.2d 515 (2d Dep't 1997)). The Second Department thus seems to have considered the hearing on May 13, at which Perich was again "sentenced" to the same eight-year term, as a proceeding that brought the sentence imposed on January 31 to execution, and as such, did not extend the amount of time in which he had to appeal.

Thus, respondent is correct that Perich's conviction became final under § 2244(d)(1) on March 2, 2002. Because Perich did not file a notice of appeal within thirty days of January 31, his conviction became final on March 2, 2002, when the thirty-day time period to file a notice of appeal under CPL § 460.10(1)(a) elapsed. See Bethea v. Girdich, 293 F.3d 577, 578 (2d Cir. 2002) (holding petitioner's conviction final upon expiration of time to file an appeal). However, as discussed below in subsection (c), § 2244(d)(1) is not the proper triggering provision governing Perich's claims.


**b. 28 U.S.C. § 2244(d)(1)(B)**

Perich argues that the correct provision triggering the statute of limitations period is 28 U.S.C. § 2244(d)(1)(B), which begins tolling on "the date on which the impediment to filing an application created by State action in violation of the

Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action."  Id. Perich claims that the state appellate court denials of his post-conviction motions constitute an "impediment" by the state under § 2244(d)(1)(B), as the "State process has become futile in protecting petitioner's constitutional right to direct appeal." (Pet.'s Dec. in Op. ¶¶ 9, 13.)

Petitioner's argument is unsound.  The "impediment" referred to in § 2244(d)(1)(B) is one created by the state that violates "the Constitution or laws of the United States" and one which "prevented [the petitioner] from filing" the federal petition. 28 U.S.C. § 2244(d)(1)(B) (emphasis added).  While the state courts may not have granted Perich the relief he sought, none of their decisions precluded him from filing a petition in federal court.

Indeed, Perich has not alleged any facts establishing a state-created impediment to filing the federal petition, let alone an impediment created by state action that violated the Constitution or federal law.  For example, petitioner does not suggest that state corrections officers confiscated his legal papers, Valverde v. Stinson, 224 F.3d 129, 133-34 (2d Cir. 2000), or that the prison library lacked the "materials necessary to prisoners to challenge their convictions or confinement," Egerton

14

v. Cockrell, 334 F.3d 433, 438 (5th Cir. 2003). Rather, Perich argues that the state courts themselves, in denying the relief he sought, created an impediment under § 2244(d)(1)(B). This interpretation is simply incorrect. Cf. Montalvo v. Strack, 99-cv-5087, 2000 WL 718439, at *2 (S.D.N.Y June 5, 2000) (multiple prison transfers not violative of Constitution or federal law and, in any event, did not create impediment to filing federal petition); Castillo v. Artuz, 99-cv-5801, 2000 WL 307373, at *4 (E.D.N.Y. Feb. 15, 2000) (denial of state FOIL requests does not constitute state-created impediment violative of Constitution or federal law).

Even assuming, arguendo, that the rendering of an opinion by a state court could constitute an "impediment" under § 2244(d)(1)(B), Perich has not alleged any facts to show how he was "prevented" from filing his federal petition in this case. Cf. Valverde, 224 F.3d at 134 (in equitable tolling context, noting that the "word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for [] tolling rests and the lateness of his filing").

**c. 28 U.S.C. § 2244(d)(1)(D)**

Perich's response papers could be read to argue that
§ 2244(d)(1)(D) should be considered the appropriate triggering
provision governing his claims.[8]  Under 28 U.S.C.
§ 2244(d)(1)(D), "the limitation period shall run from the latest
of - (D) the date on which the factual predicate of the claim or
claims presented could have been discovered through due
diligence."  See also Wims v. United States, 225 F.3d 186, 190
(2d Cir. 2000) (describing AEDPA's corresponding tolling
provision for federal prisoners' claims as resetting "the
limitations period's beginning date, moving it from the time when
the conviction became final, to the later date on which the
particular claim accrued") (citation omitted); Delacruz v. United
States, 06-cv-5666, 2006 WL 2129335, at *3 (S.D.N.Y. July 31,
2006).

Perich presents two claims: first, that he was
unconstitutionally denied his right to direct review, and second,
that he was deprived of his right to effective assistance of

---

[8] "Pro se litigants generally are entitled to a liberal
construction of their pleadings, which should be read 'to raise
the strongest arguments they suggest.'" Green v. United States,
260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89
F.3d 75, 79 (2d Cir. 1996)).

counsel.[9]  Perich's first claim was not discoverable until August

23, 2002, at the earliest, when the Appellate Division, Second

Department, converted his motion requesting to proceed in

forma pauperis and purporting to file a notice of appeal into a

motion seeking permission to file a late notice of appeal, and,

as such, denied that motion.  For similar reasons, Perich's

second claim, namely, that he was deprived of effective

assistance of counsel due to his attorney's failure to file a

timely notice of appeal on his behalf or to inform him of his

right to file an appeal within the period he had to timely file,

---

[9] The Second Circuit has not clearly held whether a separate
statute of limitations exists for each claim, or whether there is
a single statute of limitations for the entire petition.  See
Khan v. United States, 414 F. Supp. 2d 210, 215 (E.D.N.Y. 2006)
(noting disagreement among circuits as to whether "a court [must]
consider all the claims in a petition once one of the claims is
considered timely under the statute"); compare Walker v. Crozby,
341 F.3d 1240 (11th Cir. 2003) (finding that a single timely
claim renders entire application timely) with Fielder v. Varner,
379 F.3d 113, 118 (3d Cir. 2004) (considering timeliness of
application on claim-by-claim basis).  Despite its previous
articulation of the "properly filed" requirement in Artuz v.
Bennett, 531 U.S. 4, 9 (2000), the Supreme Court has more
recently suggested that different statutes of limitations apply
to distinct claims.  Compare Artuz, 531 U.S., at 9 (noting
importance of distinguishing between an "application" and a
"claim") with Pace v. DiGuglielmo, 544 U.S. 408, 416 & n.6 (2005)
(noting, in dicta, that § 2244(d)(1)(D) requires a "claim-by-
claim" consideration).  A district court in this circuit has
found the Third Circuit's approach requiring a claim-by-claim
analysis persuasive.  Khan, 414 F. Supp. 2d at 216.  In any
event, because the outcome is the same under either analysis,
each claim is analyzed separately here to determine whether the
application is timely under § 2244(d)(1).

could not have been discovered through due diligence until after August 23, 2002, when the Appellate Division issued its ruling denying his appeal as untimely.

Perich's first claim – that he was unconstitutionally denied his right to direct review – simply did not accrue until the Appellate Division denied direct review on August 23, 2002. In Johnson v. United States, the Supreme Court held that a state court decision could be considered a "fact" under the analogous "date of discovery" AEDPA provision for federal prisoners, 28 U.S.C. § 2255(4).[10] Johnson v. United States, 544 U.S. 295, 302 (2005). The Court noted the awkwardness of considering a state court decision to be a "fact" that was capable of discovery "when the fact happens to be the outcome of a proceeding in which the § 2255 petitioner was the moving party." Id. at 307. Thus, the Court explained, the "due diligence" required in discovering the "fact" of the state court decision "entail[s] diligence in the steps necessary for the existence of that fact," id. at 310, or, in that case, "prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest in challenging his prior conviction." Id. at 308.

_____

[10] The analogous "date of discovery" provision for federal prisoners provides that the limitation period should run from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(4).

Here, petitioner filed the notice of appeal and motion to proceed in forma pauperis the day after the court "resentenced" him on May 13, 2002, when he was informed of his right to appeal (although the petitioner's ability to timely invoke that right had already expired because thirty days had lapsed since sentence was imposed on January 31, 2002). Because petitioner filed his motion at the earliest conceivable time he was "in a position to realize" that he had an interest in filing an appeal, id. at 308, petitioner acted with the diligence required by § 2244(d)(1)(D). See Dicenzi v. Rose, 452 F.3d 465, 468 (6th Cir. 2006) (holding date state appellate court denied motion to file a delayed appeal as starting AEDPA "clock" under § 2244(d)(1)(D) for claim based on denial of direct appeal). Cf. Cook v. New York State Div. of Parole, 321 F.3d 274, 280 (2d Cir. 2003) (considering day prisoner notified of denial of parole as date triggering limitations period under § 2244(d)(1)(D)); Redd v. McGrath, 343 F.3d 1077, 1084 (9th Cir. 2003) (same). Correspondingly, the Second Department's denial of Perich's motion purporting to file a notice of appeal on August 23, 2002, should be considered the "factual predicate" that triggers the limitation period under

§ 2244(d)(1)(D), the "discovery" of which occurred when Perich received notice of the decision.[11]

For similar reasons, Perich's second federal claim, namely, that he was deprived of effective assistance of counsel due to his attorney's failure to file a timely notice of appeal on his behalf or to inform him of his right to file an appeal within the period he had to timely file, also could not have been discovered through due diligence until after August 23, 2002, when the Appellate Division issued its ruling denying his appeal as untimely.

The Second Circuit in <u>Wims</u> considered the application of the analogous "date of discovery" tolling provision for federal prisoners as triggering the beginning of the statute of limitations for a claim based on an attorney's failure to file a notice of appeal.  <u>Wims</u>, 225 F.3d 186.  Although the petitioner's claim in <u>Wims</u> differs from the instant case in that Wims had specifically instructed his attorney to file a notice of appeal within the statutory time period, the court's analysis of when counsel's error could have been discovered is instructive here.

---

[11] Perich has not provided the date on which he actually received notice of the August 23, 2002 decision.  As will be discussed <u>infra</u>, because a "properly filed" post-conviction application was pending at the time Perich received actual notice of the decision, for simplicity's sake, August 23, 2002 will be considered the triggering date under § 2244(d)(1)(D).

Noting that the "statute does not require maximum feasible diligence, only 'due,' or reasonable, diligence," <u>id.</u> at 190 n.4, the Second Circuit stated that the date on which petitioner, if "exercising due diligence," would have discovered the error "is a fact-specific determination that depends, among other things, on the details of the petitioner's post-conviction conversations with his attorney and the conditions of his confinement." <u>Id.</u> at 190-91.[12]

Here, Perich was apprehended and returned to the court for a February 15 hearing, a full two weeks prior to the last date on which he could have timely filed an appeal.[13] During this time,

---

[12] Courts in this circuit and elsewhere have considered the application of § 2244(d)(1)(D) in habeas claims alleging ineffective assistance of counsel. <u>See</u> <u>Raynor v. Dufrain</u>, 28 F. Supp. 2d 896, 899 (S.D.N.Y. 1998) (suggesting petitioner's discovery of counsel's alleged failure to inform petitioner of his right to appeal could trigger § 2244(d)(1)(D) tolling but ultimately finding petition untimely); <u>Dennis v. New York</u>, 98-cv-6370, 2000 WL 224103, at *2 (S.D.N.Y. Feb. 28, 2000) (suggesting petitioner's discovery of counsel's alleged failure to inform petitioner of his right to appeal could trigger § 2244(d)(1)(D) tolling but dismissing claim as unexhausted); <u>Rodriguez v. New York</u>, 01-cv-09374, 2004 U.S. Dist. LEXIS 30158, at *7 n.3 (S.D.N.Y. Sept. 7, 2004) (Wood, D.J.) (collecting cases considering length of time in determining reasonableness of due diligence in discovering counsel's failure to file notice of appeal); <u>see</u> <u>also</u> <u>Aron v. United States</u>, 291 F.3d 708, 712 (11th Cir. 2002) (remanding to district court to consider argument that date copy of appellate brief was received by federal prisoner should constitute date triggering limitations period in petition claiming ineffective assistance of appellate counsel).

[13] Thus, this case is distinguishable from <u>Ortiz v. Senkowsi</u>, 01-cv-2402, 2001 WL 1267178 (S.D.N.Y. Oct. 22, 2001), in which

Perich's counsel was presumably under the duty prescribed by

22 N.Y.C.R.R. § 671.3(a), imposing on counsel the duty to provide

written notice "advising him of his right to appeal . . . and

requesting his written instructions as to whether he desires to

take an appeal."  Such notice must be provided "immediately after

the pronouncement of sentence."  Id.

Rule 671.3 further requires that once the defendant's

attorney has provided such written notice, "if the client gives

to counsel timely written notice of his desire to appeal . . .

counsel shall promptly serve and file the necessary formal notice

---

the petitioner, who had been sentenced in absentia, could not use
the date of the execution of his sentence to toll AEDPA's statute
of limitations because the petitioner had not returned to court
until after the time for filing a notice of appeal had lapsed.
Id. at *2.  Similarly, the application of the disentitlement
doctrine as applied in Jarman v. New York, 234 F. Supp. 2d 213,
215 (E.D.N.Y. 2002) is not appropriate here.  In Jarman, the
petitioner was not entitled to benefit from the People's failure
to effect service of the Appellate Division's order dismissing
his appeal because the lack of service was due to petitioner's
unauthorized flight from his work release program.  Id. at 215-
16.  Conversely, here, after Perich was returned to court within
the time in which he had to file a notice of appeal, his
attorney's failure to inform him of this right, or to file a
notice of appeal on his behalf, cannot be attributed to Perich's
absconding.  See also Ortega-Rodriguez v. United States, 507 U.S.
234, 244 (1993) (distinguishing situation in which a fugitive
returns to custody before the filing of a notice of appeal in
concluding appellate court dismissal of appeal was inappropriate
sanction); Lopez v. Malley, 552 F.2d 682, 683 (10th Cir. 1977)
(dismissing appeal of district court denial of habeas petition
after petitioner escaped from custody but ordering that appeal
would be reinstated if petitioner returned to state custody
within 30 days of circuit court order).

of appeal." Id. The written notice counsel is required to provide must set forth, inter alia, "the applicable time limitations with respect to the making of the application for permission to appeal," the "manner of instituting the appeal," and the right to seek assignment of counsel upon proof of inability to pay. 22 N.Y.C.R.R. § 671.3(b)(1)-(3). See People v. West, 100 N.Y.2d 23, 26, 789 N.E.2d 615, 618, 759 N.Y.S.2d 437, 440 (2003) (describing the rules promulgated by the Appellate Division to effectuate the right to appeal, which "is a statutory right that must be affirmatively exercised and timely asserted") (citations omitted).[14]

The alleged error of counsel here is, in part, the failure to inform petitioner of his right to appeal.[15] Surely, petitioner could not have been expected to become immediately aware that his attorney was rendering ineffective assistance at the time he was rendering it, especially when the alleged error is the failure to inform him of the underlying right he claims he

_____

[14] The preceding discussion expresses no opinion as to the merits of petitioner's underlying ineffective assistance claim and is provided solely for purposes of determining the instant petition's timeliness under § 2244(d).

[15] It is of no moment that Perich could have discovered that no notice of appeal had been filed at any point after he had been returned to the jurisdiction of the court. As the Second Circuit has noted, "[t]he mere fact that . . . it was possible for appellant to ascertain the status of his appeal . . . is not dispositive." Wims, 255 F.3d at 190 n.4.

23

was denied by the alleged ineffectiveness.[16]  See Wims, 225 F.3d at 190 ("[D]ue diligence plainly did not require [petitioner] to check up on his counsel's pursuit of an appeal on . . . the very day on which [petitioner's] conviction became final absent appeal.").  There was no reason for Perich to even inquire into the effectiveness of his counsel prior to August 23, 2003, when the Appellate Division issued its order sua sponte converting Perich's motion to proceed in forma pauperis into a motion for permission to file a late notice of appeal and denying it as such.[17]  Thus, under § 2244(d)(1)(D), the limitations period was triggered on August 23, 2002, and Perich had 365 days, or until August 23, 2003, to file his federal petition.  Since Perich did not file his federal petition until May 31, 2005, his petition is

---

[16] Perich was still represented by his trial counsel, who he now claims was ineffective, at the time the 30-day period in which to file a notice of appeal had lapsed, and remained represented by him until at least May 29, 2002, when his trial counsel filed a notice of appeal on his behalf.  (Brodt Aff. ¶ 8.)

[17] This is in contrast to the situation where, after losing on direct appeal, a petitioner subsequently raises the issue of ineffective assistance of counsel.  Once a petitioner's direct appeal has been exhausted and his conviction has become final, the petitioner is put on notice that prior counsel has been unsuccessful and failed to secure release (or retrial) for the petitioner.  He then has one year to file a habeas petition.  28 U.S.C. § 2241(d)(1).  Perich, however, did not learn of his counsel's failure to successfully file a notice of appeal prior to August 23, 2003.  Until that adverse ruling was issued, Perich could not be expected to inquire into the effectiveness of his counsel.

untimely unless Perich can toll the limitations period by demonstrating that "properly filed" post-conviction applications were pending in the state court for at least 647 days (i.e., the number of days that elapsed between August 23, 2003 until May 31, 2005).

### (3)

### Post-Conviction Application Tolling

**a. The "Converted" § 460.30 Motion and Two Motions to Reargue**

AEDPA's tolling provision provides that "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted" toward the limitations period. 28 U.S.C. § 2244(d)(2). Respondent concedes that the limitations period was tolled during the pendency of petitioner's motion to file a late notice of appeal and his two motions to reargue the denial of that motion, calculating this total time tolled as six months and seven days. (Brodt Aff. ¶ 23.)

It appears that respondent's calculation proceeds as follows: the statute was tolled for 102 days, from May 14, 2002, to August 23, 2002, during which petitioner's first motion to file a late notice of appeal was pending; for 50 days, from September 19, 2002, until November 7, 2002, when the Second

Department decided the motion to reargue; and 38 days, from February 3, 2003 until March 12, 2003, when the Second Department denied the second motion to reargue, totaling a period of 190 days in all. (Resp't's Mem. of Law, at 15.)

However, respondent's argument, which implies that the limitations period should not be tolled during the intervals between petitioner's motions[18], must be rejected. The Supreme Court has held that "an application is pending [for AEDPA tolling purposes] as long as the ordinary state collateral review process is 'in continuance,' i.e., 'until completion of' that process." Carey v. Saffold, 536 U.S. 214 (2002). See Kendrick v. Grenier, 296 F. Supp.2d 348, 356 (E.D.N.Y. 2003) ("[T]he term 'pending' in the statute has been construed broadly to encompass all the time during which a state prisoner attempts, through proper use of state procedures, to exhaust state court remedies with regard to a particular post-conviction application.").

The "application" at issue here is Perich's motion to proceed in forma pauperis and his attempt to appeal his conviction to the Appellate Division. Although the Second Department construed this application as a motion for leave to

---

[18] The first interval is the period between the denial of the "converted 460.30" motion and petitioner's filing of the first motion to reargue. The second interval is the period between the denial of the first motion to reargue and the filing of the second motion to reargue.

file a late notice of appeal under CPL § 460.30, this motion was nonetheless "properly filed," as respondent concedes, because a CPL § 460.30 motion is recognized as "an application for post-conviction relief" under New York law. <u>See</u> <u>Adeline v. Stinson</u>, 206 F.3d 249, 251-52 (2d Cir. 2000). <u>See</u> <u>also</u> <u>Rodriguez v.</u> <u>People of State of New York</u>, 01-cv-09374, 2003 WL 289598, at *13 & n.8 (Feb. 11, 2003) (Peck, M.J.) (motion to proceed <u>in</u> <u>forma</u> <u>pauperis</u> converted into a § 460.30 motion was deemed "properly filed" and thus tolled the limitations period). The "converted" § 460.30 motion was also timely, having been filed within 13 months of when Perich's sentence was imposed.[18]

---

[19]    CPL § 460.30(1) provides that:

> Upon motion to an intermediate appellate court of a defendant who desires to take an appeal to such court from a judgment, sentence or order of a criminal court but has failed to file a notice of appeal . . . with such criminal court within the prescribed period . . . such intermediate appellate court . . . may order that the time for the taking of such appeal . . . be extended . . . upon the ground that the failure to so file or make application in timely fashion resulted from (a) improper conduct of a public servant or improper conduct, death or disability of the defendant's attorney, or (b) inability of the defendant and his attorney to have communicated, in person or by mail, concerning whether an appeal should be taken, prior to the expiration of the time within which to take an appeal . . . . Such motion must be made with due diligence after the time for the taking of such appeal has expired, <u>and in any case not more than one year thereafter</u>.

Because respondent concedes Perich's motion to proceed <u>in forma pauperis</u> and purporting to file a notice of appeal was "properly filed," it is necessary to determine when it "ceased to be pending." <u>Hizbullahankhamon</u>, 255 F.3d at 71. As noted by the Second Circuit in <u>Hizbullahankhamon</u>, "[a]n application for post-conviction review is pending from the time it is filed, during the intervals between disposition and appeal, and until further appellate review is unavailable." <u>Id.</u>

Although the limitations period is only tolled by properly filed motions, and not by "creative, unrecognized motions for leave to appeal," <u>Adeline</u>, 206 F.3d at 253, respondent here concedes the two motions to reargue were also "properly filed" and served to toll the statute.[20] (Brodt Aff. ¶ 23.) As such, the two reargument motions <u>extended</u> the time during which the initial post-conviction application filed on May 14, 2002 was "pending," rather than restarted the limitations period anew when

_____

(Emphasis added).

[20] Motions for reargument in the Second Department are governed by CPL § 470.50(1) and 22 N.Y. Compl. Codes R. & Regs. ("N.Y.C.R.R.") tit. 14, § 670.6(a). Under CPL § 470.50(1), "[a]fter its determination of an appeal taken pursuant to article four hundred fifty, an appellate court may in its discretion, upon motion of a party adversely affected by its determination, or upon its own motion, order a reargument or reconsideration of the appeal." The rules in the Second Department provide that such motions be made "within 30 days after service of a copy of the decision and order determining the cause or motion, with notice of its entry." 22 N.Y.C.R.R. § 670.6(a).

28

each reargument motion was filed.  See Hizbullahankhamon, 255
F.3d at 70 ("Once a court determines that the initial application
was 'properly filed,' the 'properly filed' inquiry comes to an
end; the only remaining question is when further appellate review
of the initial application becomes unavailable.").

In other words, the first interval between when the
"converted" § 460.30 motion was decided and when the first
motion to reargue was filed, and the second interval between when
the first motion to reargue was decided and when the second
motion to reargue was filed, must be tolled because further
appellate review was available.[21]  See, e.g., Carey, 536 U.S. at
219-20 (holding that "pending" period includes the time between a
lower state court decision and petitioner's filing of a notice of

---

[21] Although not squarely deciding the issue, the Second
Circuit in Hizbullahankhamon declined to hold that the time
during which the petitioner in that case could have sought a
motion to reargue a denial of a motion for writ of error coram
nobis tolled the limitations period.  Hizbullahankhamon v.
Walker, 255 F.3d at 72-73.  The Hizbullahankhamon court doubted
whether motions to reargue denials of coram nobis petitions were
permitted in the First Department, id. at 73, and, assuming they
were, found that none were filed within the thirty day period for
filing reargument motions in that case.  Id. at 74.  However,
here, petitioner did file motions to reargue the denial of his
attempt to directly appeal his conviction and respondent concedes
that the two reargument motions were "properly filed."  (Brodt
Aff. ¶ 23.)  In addition, at least one court in the Second
Circuit has found that a motion to reargue the denial of a
converted § 460.30 motion tolled the limitations period.  See
Rodriquez v. People, No. 01-cv-9374, 2003 WL 289598, at *13
(S.D.N.Y. Feb. 11, 2003) (Peck, M.J.).

appeal to a higher state court); <u>Geraci v. Senkowski</u>, 211 F.3d 6, 9 (2d Cir. 2000) (tolling statute of limitations from date when § 440.20 motion filed until petitioner was denied leave to appeal Appellate Division's denial of petitioner's § 440.20 motion); <u>Bellamy v. Fischer</u>, 05-cv-2840, 2006 WL 2051038, at *4 (S.D.N.Y. July 24, 2006) (tolling entire period beginning with date § 440.10 motion was filed, through Appellate Division's denial of that motion, Court of Appeal's denial of motion for leave to appeal and period in which motion rearguing denial of leave to appeal was pending, and ending tolling on date motion to reargue was denied); <u>Gomez v. Duncan</u>, 02-cv-0846, 2002 WL 1424584, at *3-4 (S.D.N.Y. July 1, 2002) (Peck, M.J.) (tolling days between when leave to appeal denial of § 440 motion was filed and when motion to reargue denial of leave was filed, and tolling days between when leave to appeal <u>coram</u> <u>nobis</u> petition was denied and motion to reargue denial of leave to appeal <u>coram</u> <u>nobis</u> motion was filed); <u>Foster v. Phillips</u>, 03-cv-3629, 2005 WL 2978686, at *4 (S.D.N.Y. Nov. 7, 2005) (Freeman, M.J.) (§ 440.10 motion is "pending" from time it is initially filed until leave to appeal is denied by Appellate Division).

Having found that the "converted § 460.30" application remained pending until at least March 12, 2003, when the Second Department denied Perich's second motion to reargue, the statue

is deemed tolled for 301 days – from August 23, 2002 until March 12, 2003 – and Perich must now account for an additional 346 days.

## b.  The Application Seeking Leave to Appeal the Three Orders of the Appellate Division

Respondent argues that except for Perich's motion purporting to file a notice of appeal and the two motions denying reargument of that motion, none of Perich's other post-conviction motions were "properly filed" under AEDPA, and thus cannot serve to toll the statute of limitations period.  (Resp't's Mem. of Law, at 15.)  Specifically, respondent argues that the statute should <u>not</u> be tolled from April 23, 2003, when Perich filed leave to appeal the three orders of the Second Department to the Court of Appeals, until July 18, 2003, when the Court of Appeals denied leave, because respondent contends those orders were not appealable.  (Resp't's Mem. of Law, at 15.)

As a preliminary matter, respondent mischaracterizes the motion seeking leave to appeal the three orders of the Appellate Division as a separate post-conviction "application," rather than a motion that would extend the time during which the "converted" § 460.30 motion filed May 14, 2002 remained "pending."  Rather, the appropriate question is when further "appellate review of the

initial application [became] unavailable," <u>Hizbullahankhamon</u>, 255 F.3d at 70.

Applying that analysis here requires a determination of whether the application seeking leave to appeal the three orders of the Appellate Division was one properly brought in the Court of Appeals. <u>See</u> <u>Geraci</u>, 211 F.3d at 9 (holding Appellate Division's denial of <u>coram</u> <u>nobis</u> petition meant the application was no longer "pending" because the denial of the <u>coram</u> <u>nobis</u> petition was not appealable to the Court of Appeals).

It is well established that denials of motions to reargue are not appealable in New York. <u>See</u> CPL § 450.90 (entitled "[a]ppeal to court of appeals from order of intermediate court; in what cases authorized."). It follows that an application seeking leave to appeal an order denying a motion to reargue cannot serve to toll the limitations period under § 2244(d)(2). <u>See</u> <u>Evans v. Senkowski</u>, 228 F. Supp. 2d 254, 263 (E.D.N.Y. 2002) (citing cases).

Indeed, Judge Rosenblatt "dismissed" the portions of the application seeking leave to appeal the November 7, 2002 and March 13, 2003 orders, which were construed by the Second Department as motions to reargue. However, the portion of the application seeking leave to appeal the August 23, 2002 order was "denied" rather than "dismissed." <u>People v. Perich</u>, 100 N.Y.2d

585, 764 N.Y.S.2d 396, 793 N.E.2d 488 (2003) (Rosenblatt, J.)
(Table).

Thus, the issue is whether the portion of the application seeking leave to appeal the August 23, 2002 order was sufficient to render the initial "converted" § 460.30 motion "pending" while before the Court of Appeals. To prevail on this point, petitioner must show (1) that his application complied with the requisite filing requirements, including timeliness and (2) that it was a motion properly brought in the Court of Appeals. See Carey, 536 U.S. at 220 ("[U]ntil the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'"); Evans, 228 F. Supp. 2d, at 260 ("AEDPA's toll . . . only applies to papers filed in connection with relief recognized under relevant state procedures.").

### i. The Timeliness of the Portion of the Leave Application Seeking Leave to Appeal the Order of August 23, 2002

Perich had 30 days after service of the copy of the August 23, 2002 order in which to file a motion seeking leave to appeal the order to Court of Appeals under CPL § 460.10(5)(a).[22] Perich

---

[22] Under New York law, the filing of a motion to reargue that is later denied does not extend the time in which an appellant has to move for leave to appeal. See People ex rel. Eastman v. Martin, 7 N.Y.2d 732, 193 N.Y.S.2d 478, 162 N.E.2d 652 (1959)

did not file the motion seeking leave to appeal the three orders
until March 12, 2003 – well after the 30 day time period had
elapsed.

Although mindful of the Supreme Court's admonition in <u>Carey</u>,
536 U.S. at 225-26, not to rely solely on the language of
tersely-worded state court opinions in determining the timeliness
of state court filings,[23] it seems Judge Rosenblatt construed
Perich's application as a motion seeking permission to file a
late application for a certificate granting leave under
§ 460.30(1), as the Second Department had construed a similar

_____

(dismissing leave to appeal order denying reargument motion as
well as leave to appeal order of Appellate Division affirming
decision of lower court on the ground that "application was not
made within the time specified" by statute); <u>Bullock v. Warden,
Auburn Corr. Facility</u>, 575 F. Supp. 681, 683 (S.D.N.Y. 1983)
(discussing procedural history of habeas petition and explaining
that petitioner's application seeking leave to appeal Appellate
Division's order affirming conviction and Appellate Division's
order denying a subsequent motion to reargue was denied because
"the former [was] not appealable, and the latter . . . was
untimely under CPL § 460.30").  <u>See also</u> Arthur Karger, <u>Powers of
the New York Court of Appeals</u>, § 20:23, at 729-30 (rev. 3d ed.
2005) (noting that although an order granting a motion to reargue
has the effect of extending the time to take an appeal even
though the court adheres on the reargument to its prior decision,
"there is no extension of the time to appeal where the motion for
reargument is denied").

[23] In <u>Carey</u>, 536 U.S. at 225-26, the Supreme Court noted that
the language of a state court opinion is not determinative of
whether the motion decided in the order was timely filed,
suggesting that "[a] court will sometimes address the merits of a
claim that it believes was presented in an untimely way."

motion previously in this litigation.[24]  The leave application

was apparently considered a motion seeking permission to file a

late notice of appeal.  As such, the application was timely

because it was filed in the Court of Appeals on March 12, 2003,

well within 13 months after the August 23, 2002 order.[25]

---

[24] CPL § 460.30(1) provides that "upon motion to the court of
appeals of a defendant who desires to take an appeal to such
court from an order . . . of an intermediate appellate court, but
has failed to make an application for a certificate granting
leave to appeal to the court of appeals . . . within the
prescribed period . . . the court of appeals . . . may order that
the time for . . . applying for leave to appeal be extended."
Id.  "Such motion must be made with due diligence after the time
for the taking of such appeal has expired, and in any case not
more than one year thereafter."  Id. (emphasis added).

[25] If the leave application was untimely, the Court of Appeals
would have dismissed, rather than denied, the application,
because the court would not have had jurisdiction to entertain
it.  See People v. Thomas, 47 N.Y.2d 37, 43, 389 N.E.2d 1094,
1096, 416 N.Y.S.2d 573, 576 (1979) ("We remain convinced that
strict construction is appropriate since the time limits within
which appeals must be taken are jurisdictional in nature and
courts lack inherent power to modify or extend them.").  New York
state courts have used consistent language when dismissing
motions on timeliness grounds.  Cf. First Cent. Ins. Co. v. Zesha
Auerbach, 7 N.Y.3d 857, 857 N.E.2d 1127, 824 N.Y.S.2d 595 (2006)
("Motion, insofar as it seeks leave to appeal from the Appellate
Division order denying reargument, or in the alternative, leave
to appeal to the Court of Appeals, dismissed upon the ground that
such order does not finally determine the action within the
meaning of the Constitution; motion, insofar as it seeks leave to
appeal the Appellate Division order of affirmance, dismissed as
untimely.") (emphasis added); People v. Carnett, 8 N.Y.3d 852,
830 N.Y.S.2d 695, 862 N.E.2d 787 (2007) ("Motion for an extension
of time within which to apply for permission to appeal pursuant
to CPL 460.20 dismissed as untimely") (emphasis added); People v.
Hamilton, 7 N.Y.3d 898, 826 N.Y.S.2d 606, 860 N.E.2d 68 (2006)
("Dismissed as untimely.") (Table); People v. Scott, 7 N.Y.3d
843, 823 N.Y.S.2d 772, 857 N.E.2d 67 (2006) (same) (Table);

**ii.  The Appealability of the August 23, 2002 Order**

The fact that the leave application was "denied" as to the August 23, 2002 order also supports the conclusion that the order was appealable to the Court of Appeals.

The Appellate Division's August 23, 2002 order states:

> Upon the papers filed in support of the motion and the papers filed in opposition thereto, it is,
> ORDERED that the branch of the motion which is for leave to file a late notice of appeal from the judgment is denied; and it is further,
> ORDERED that on the court's own motion, the appeal from the execution of sentence is dismissed (see People v. Devillar, 264 AD2d 528); and it is further,
> ORDERED that the remaining branches of the motion are denied as academic.
>
> People v. Perich, App. Div., 2d Dep't, Nos. 02-04705, 02-07366, Aug. 23, 2002, Prudenti, P.J., Altman, Feuerstein, JJ., Index No. 3422/00.

It is clear that the portion of the order construing Perich's notice of appeal and motion to proceed in forma pauperis as a motion to file a late notice of appeal under CPL § 460.30 was not appealable to the Court of Appeals because an order

---

People v. Washington, 7 N.Y.3d 783, 820 N.Y.S.2d 544, 853 N.E.2d 1112 (2006) (same); People v. Hamilton, 70 N.Y.2d 890, 890-91, 524 N.Y.S.2d 427, 519 N.E.2d 338, 338 (1987) ("Motion for extension of time within which to apply for permission to appeal pursuant to CPL 460.20 dismissed as untimely (CPL 460.30(1)).") (emphasis added). See also Arthur Karger, Powers of the New York Court of Appeals, § 20:23, at 727 (noting that prescribed time limitations are jurisdictional and that the Court of Appeals has strictly enforced such limitations with respect to appeals to intermediate appellate courts).

denying a § 460.30(1) motion is appealable only if "such order

states that the determination was made upon the law alone."

CPL § 460.30(6)(a).  See <u>People v. Thomas</u>, 44 N.Y.2d 759, 760,

405 N.Y.S.2d 684, 376 N.E.2d 1329 (1978); <u>People v. Corso</u>, 40

N.Y.2d 578, 581, 388 N.Y.S.2d 886, 889-90, 357 N.E.2d 357, 360

(1976).  No such statement can be found in the August 23 order.

<u>See</u> <u>Raynor v. Dufrain</u>, 28 F. Supp. 2d 896, 899 (S.D.N.Y. 1998)

(finding petitioner's appeal of order denying leave to file a

late notice of appeal under § 460.30(1) to the Court of Appeals

"completely nugatory" as such order did not contain the statement

required by § 460.30(6)).

    However, the second branch of the order dismissing the

appeal of the execution of sentence <u>was</u> appealable under

CPL § 470.60.[26]  Section 470.60(3) allows for an appeal to be

taken to the Court of Appeals from an order of an intermediate

appellate court dismissing an appeal thereto, provided that leave

to appeal is granted by a certificate issued by a Judge of the

Court of Appeals pursuant to CPL § 460.20(3)(b).  In keeping with

the limitations on the review power of the Court of Appeals, such

---

[26] Section 470.60(1), which governs dismissals of an
intermediate appellate court, provides that an appellate court
"may . . . upon its own motion, dismiss such an appeal upon the
ground of mootness, lack of jurisdiction to determine it, failure
of timely prosecution thereof, or other substantial defect,
irregularity or failure of action by the appellant with respect
to the prosecution or perfection of the appeal."

an appeal may be based "either upon the ground that the dismissal was invalid as a matter of law or upon the ground that it constituted an abuse of discretion." <u>Id.</u>

Here, the leave to appeal was taken, in part, from the Appellate Division's dismissal of Perich's "appeal from the execution of sentence." <u>Perich</u>, App. Div., 2d Dep't, Nos. 02-04705, 02-07366, Aug. 23, 2002, Prudenti, P.J., Altman, Feuerstein, JJ., Index No. 3422/00. The Court of Appeals has entertained a similar appeal "from the execution of sentence," <u>People v. Scott</u>, 80 N.Y.2d 888, 587 N.Y.S.2d 900, 600 N.E.2d 627 (1992), confirming that the Court of Appeals does indeed have jurisdiction to entertain such leave applications. <u>Id.</u> (concluding that "the Appellate Division did not err as a matter of law in dismissing the appeal from an execution of judgment to that court."). <u>Cf.</u> <u>People v. Pitts</u>, 6 N.Y.2d 288, 291, 189 N.Y.S.2d 650, 160 N.E.2d 523, 524 (denying People's claim that court lacked jurisdiction to review order of Appellate Division dismissing appeal thereto as such dismissal "is a final determination and affects a substantial right of defendant"). <u>See generally</u> Arthur Karger, <u>Powers of the New York Court of Appeals</u>, § 20:18, at 709 n.4 (rev. 3d ed. 2005) (listing cases in which Court of Appeals reviewed orders of dismissals by Appellate Division pursuant to § 470.60(3) authority).

Again, whether the application seeking leave to appeal the Appellate Division's August 23, 2002 order extended the limitations period turns not the merits, but on whether the application was one "recognized" under the state court's procedural law, Stinson, 206 F.3d at 251-52, and whether it complied with filing requirements for such a motion. Evans, 228 F. Supp. 2d at 263. Because both of those questions are answered in the affirmative, the statute is deemed tolled until Judge Rosenblatt denied the application seeking leave to appeal on July 18, 2003. The New York Court of Appeals considered the application to be timely and denied it, at least in part; as such, it must be considered "properly filed."

Under the above analysis, the statute has run for a total of zero days, has been tolled for 329 days, and Perich now must account for an additional 218 days.

**c. The Coram Nobis Petition and the Application Seeking Leave to Appeal the Denial of the Coram Nobis Petition**

On July 18, 2003, the AEDPA limitations period began to run, and did so for 189 days, until Perich filed his next post-conviction application on January 23, 2004.[27] Respondent argues

_____

[27] Unlike under § 2244(d)(1), where the calculation of when a conviction becomes final by the conclusion of direct review includes the 90 days in which the defendant has to petition the United States Supreme Court for a writ of certiorari after a

that this motion, a writ for error <u>coram</u> <u>nobis</u> alleging

ineffective assistance of counsel, was not "properly filed" and

thus could not toll the limitations period because <u>coram</u> <u>nobis</u>

relief in New York is limited to ineffective assistance of

appellate, not trial, counsel. (Resp't Mem. of Law, at 16.)

The Appellate Division's February 14, 2005 denial of the

<u>coram</u> <u>nobis</u> application states:

> Application by the appellant for a writ of error
> <u>coram</u> <u>nobis</u>, in effect, to vacate 1) a judgment of
> the Supreme Court, Queens County, rendered January
> 31, 2002, and 2) an execution of sentence of the
> same court dated May 14, 2002, so that he may be
> resentenced <u>nunc</u> <u>pro</u> <u>tunc</u> and file a notice of
> appeal, on the ground, inter alia, that his
> attorney failed to file a timely notice of appeal
> from the judgment of conviction . . . .
> ORDERED that the application is denied.
> The appellant has failed to establish that he was
> denied the effective assistance of appellate
> counsel (<u>see</u> <u>Jones v. Barnes</u>, 463 U.S. 745; <u>People</u>
> <u>v. Stultz</u>, 2 NY3d 277; <u>People v. Bachert</u>, 69 NY2d
> 593; <u>People v. Montgomery</u>, 24 NY2d 130).
>
> <u>People v. Perich</u>, 15 A.D.3d 505, 789 N.Y.S.2d 435
> (2d Dep't 2005).

Respondent argues that the Second Department's citation to

<u>Bachert</u> and <u>Montgomery</u>, cases respondent contends "stand for the

proposition that the relief petitioner sought was not available

in that forum," indicate that the writ of error <u>coram</u> <u>nobis</u> was

---

denial by the Court of Appeals, this 90-day period does not
extend the time during which a state post-conviction application
is "pending" under § 2244(d)(2).  <u>See</u> <u>Lawrence v. Florida</u>, 127 S.
Ct. 1079, 1083-84 (2007).

"improperly filed."[28]  (Resp't's Mem. of Law, at 17.)  The <u>coram</u>

<u>nobis</u> petition, despite the ruling of the Court of Appeals, was

nonetheless "properly filed" in the Appellate Division for

purposes of § 2244(d)(2).  While defendants cannot "create their

own methods of seeking post-conviction relief by availing

themselves of a state court's general motion practice," <u>Adeline</u>,

206 F.3d at 252, an "application is '<u>properly</u> filed' when its

delivery and acceptance are in compliance with the applicable

laws and rules governing filings."  <u>Id.</u>  These rules usually

prescribe "the form of the document, the time limits upon its

delivery, the court and office in which it must be lodged, and

the requisite filing fee."  <u>Artuz v. Bennett</u>, 531 U.S. 4, 8

(2000).[29]  Indeed, "[t]he question whether an application has

been 'properly filed' is quite separate from the question whether

_____

[28] Respondent also argues that because the Court of Appeals
dismissed Perich's application for leave to appeal the Appellate
Division's denial of the writ of error <u>coram</u> <u>nobis</u>, the Court of
Appeals did not consider petitioner's motion to be a properly
filed <u>coram</u> <u>nobis</u> petition in the Appellate Division.  (Resp't's
Mem. of Law, at 16.).  Although the Court of Appeal's decision to
dismiss Perich's motion for leave to appeal may indicate that the
motion for leave to appeal was not "properly filed," the decision
to dismiss that motion does not show that Perich's <u>coram</u> <u>nobis</u>
petition was improperly filed in the Appellate Division.

[29] In New York, "[t]here is no time limit for filing a writ of
error <u>coram</u> <u>nobis</u>."  <u>Smith v. Duncan</u>, 411 F.3d 340, 348 n.6 (2d
Cir. 2005).  In other words, "[r]egardless of when the New York
court 'considers' a <u>coram</u> <u>nobis</u> petition to be filed, the date of
filing does not render it proper or improper." <u>Fernandez v.
Artuz</u>, 402 F.3d 111, 116 (2d Cir. 2005).

the <u>claims contained in the application</u> are meritorious and free
of procedural bar." <u>Id.</u> (emphasis in original; footnote
omitted).

Respondent's argument that the "<u>relief</u> petitioner sought was
not available in that forum" actually points to the difference
between a "condition to filing," as opposed to a "condition for
obtaining <u>relief</u>," as described in <u>Artuz</u>.  <u>Id.</u> at 11 (emphasis
added).  <u>Cf.</u> <u>Pace v. Diguglielmo</u>, 544 U.S. 408, 419 (2005) ("For
purposes of determining what are 'filing' conditions, there is an
obvious distinction between time limits, which go to the very
initiation of a petition and a court's ability to consider that
petition, and the type of 'rule of decision' procedural bars at
issue in <u>Artuz</u>, which go to the ability to obtain <u>relief</u>.")
(emphasis added).  The Appellate Division specifically stated
that Perich "failed to establish that he was denied the effective
assistance of appellate counsel," <u>Perich</u>, 15 A.D.3d 505, 789
N.Y.S.2d 435 (2d Dep't 2005), indicating that the Appellate
Division reviewed the merits of his petition, a fact inconsistent
with a finding that the motion had been improperly filed.

Furthermore, despite respondent's characterization to the
contrary, the February 14, 2005 order's citations to <u>Bachert</u> and
<u>Montgomery</u> do not compel the conclusion that the petition was
"improperly filed."  Respondent appears to argue that the order's

citation to <u>Bachert</u> supports respondent's position that claimed
errors of trial counsel are to be brought as motions under
§ 440.10, and not as writs of error <u>coram</u> <u>nobis</u> in the Appellate
Division.  Respondent's position also seems to be that the
court's citation to <u>Montgomery</u> should be read as implying that
the relief petitioner sought in <u>coram</u> <u>nobis</u> petition was not
available because <u>Montgomery</u> has been superceded by an act of the
Legislature.

    Respondent's characterization of the order denying the <u>coram</u>
<u>nobis</u> petition is not persuasive.  The court in <u>Bachert</u> decided
that the proper procedural mechanism for bringing a claim of
ineffective assistance of appellate counsel was not as a § 440.10
motion in the <u>nisi</u> <u>prius</u> court, as the defendant had argued, but
rather as a writ for error <u>coram</u> <u>nobis</u> in the Appellate Division.
<u>Bachert</u>, 69 N.Y.2d, 593, 509 N.E.2d 318, 516 N.Y.S.2d 623.  The
court noted that a motion under § 440.10(1)(h), which is brought
in the court of conviction, was limited to a collateral attacks
on whether "the judgment itself was obtained in violation of the
defendant's rights."  <u>Id.</u>  On the other hand, "[a]ppellate courts
do not render judgments of conviction; they only affect them,"
and thus to allow a claim of appellate court error to be brought
under CPL § 440.10(1)(h) would "constitute legislation by
judicial fiat."  <u>Bachert</u>, 69 N.Y.2d, at 597, 516 N.Y.S.2d at 625,

509 N.E.2d at 320.  Thus, the <u>Bachert</u> court concluded that an
ineffective assistance of appellate counsel claim should be
brought as a writ of error <u>coram</u> <u>nobis</u> in the Appellate Division,
as <u>coram</u> <u>nobis</u> proceedings have traditionally been "addressed
[in] the court which rendered the judgment or order from which
relief is sought."  <u>Id.</u> (citations omitted).  In addition, as
petitioner notes in his response papers, <u>Bachert</u> is often cited
for the proposition that "the Legislature did not expressly
abolish the common-law writ of coram nobis or necessarily embrace
all of its prior unanticipated functions within CPL 440.10."  <u>Id.</u>

Thus, one possible reading of the February 14, 2005 order's
citation to <u>Bachert</u> is that the ineffective assistance claim <u>was</u>
properly brought as a writ of error <u>coram</u> <u>nobis</u>, as the
petitioner is not attacking any errors that could have been
corrected by the trial court, but rather was seeking relief from
the order of the Appellate Division denying his attempt to
appeal.

Turning to the court's citation to <u>People v. Montgomery</u>, 24
N.Y.2d 130, 229 N.Y.S.2d 156, 247 N.E.2d 130 (1969), the issue in
that case was whether a defendant's "allegation that he was not
informed of his right to appeal presents an issue of fact which
requires a hearing in order to determine the veracity of the
contention."  <u>Montgomery</u>, 24 N.Y.2d at 132, 229 N.Y.S.2d at 159,

247 N.E.2d at 132.  Taking the opportunity to "announce clearly
that every defendant has a fundamental right to appeal his
conviction and that, accordingly, basic fairness and due process
require that the right not be dissipated either because the
defendant was unaware of its existence or counsel failed to abide
by a promise to either file or prosecute an appeal," the court
ordered that a hearing be held to determine whether the
petitioner had been informed of his right to appeal.  Montgomery,
24 N.Y.2d 130 at 134, 229 N.Y.S.2d at 159, 247 N.E.2d at 133.
If, at the hearing, Montgomery's failure to file a notice of
appeal was found attributable to his counsel's failure to advise
him of his right to appeal, then he was to be "resentenced" so
that time in which head to file an appeal would run anew,
Montgomery, 24 N.Y.2d at 133-34, 247 N.E.2d at 133, 229 N.Y.S.2d
at 161, a practice that later became known as granting
"Montgomery relief."

     Thus, the citation to Montgomery could be read as simply
illustrating the underlying ineffective assistance rights alleged
in the petition.  Indeed, respondent's characterization of the
order requires the further extrapolation that the Legislature's
adoption of CPL § 460.30 statutorily replaced the relief formerly
available under Montgomery.  Yet, the case that better
illustrates the fact that Montgomery relief is no longer

available, <u>People v. Corso</u>, 40 N.Y.2d 578, 580, 388 N.Y.S.2d 886,

889, 357 N.E.2d 357, 359 (1976), was <u>not</u> cited in the order.  <u>See</u>

<u>Corso</u>, 40 N.Y.2d at 580, 388 N.Y.S.2d at 889, 357 N.E.2d at 360

("While there is no history indicating that the Legislature

explicitly sought to codify <u>People v. Montgomery</u> [] in

CPL 460.30, the statute plainly and precisely deals with and

encompasses the relief sought on a <u>Montgomery</u> claim and

eliminates the necessity of resentencing for the purposes of

taking a timely appeal.") (citations omitted).

    More pertinent to the "properly filed" determination is that

the Appellate Division appeared to review the merits of the

petitioner's motion.  The order cites <u>Jones</u>, 463 U.S. 745 (1983),

a Supreme Court case broadly defining the standards for

ineffective assistance of appellate counsel, and <u>Stultz</u>, 2 N.Y.3d

277, 810 N.E.2d 883, 778 N.Y.S.2d 431 (2004), the most recent New

York Court of Appeals case interpreting the effective assistance

standard for appellate counsel.  This fact alone belies

respondent's argument that the order's citation to <u>Montgomery</u> and

<u>Bachert</u> indicates that the Appellate Division believed Perich's

<u>coram</u> <u>nobis</u> petition was improperly filed.

    If the Appellate Division did not have jurisdiction to

consider the <u>coram</u> <u>nobis</u> petition, it certainly would not have

cited cases articulating the standards for evaluating the merits

of petitioner's claims.  Thus, whatever the citation to
Montgomery and Bachert may "stand for," it cannot be the fact
that petitioner's writ for error coram nobis was not properly
filed for purposes of § 2244(d)(2) in this case.

One New York State court has explicitly held that the proper
remedy when a defendant alleges that his attorney failed to file
a notice of appeal is for the defendant "to present his claim of
ineffective assistance of counsel by writ of error coram nobis in
the Appellate Division."  People v. Morales, No. 2094/99, 2003 WL
1093005, at *5 (Sup. Ct. New York County Jan. 23, 2003).
Moreover, several federal district courts have dismissed habeas
petitions alleging ineffective assistance of counsel – where the
claim was the exact error alleged here, i.e., the failure to file
a notice of appeal – as not exhausting available state remedies
under § 2254(b)(1)(a) because the petitioners had not previously
sought coram nobis relief in state court.  See Dumas v. Kelly,
105 F. Supp. 2d 66, 74-75 (E.D.N.Y. 2000) (dismissing petition
raising unexhausted claim based on failure to file a notice of
appeal because the claim was not raised via a writ of error coram
nobis); Boyton v. Hicks, 02-cv-1439, 2003 WL 22087634, at *3
(S.D.N.Y. Sept. 9, 2003) (concluding that a writ of error coram
nobis is the proper vehicle for bringing a claim of ineffective
assistance of appellate counsel, "such as the failure to

prosecute an appeal or to file a notice of appeal. In other words, an ineffective assistance claim based on the failure to file a notice of appeal is a challenge to the effectiveness of appellate counsel.") (citations omitted); Rodriguez v. People, 00-cv-1399, 2000 WL 962748, at *2-3 (S.D.N.Y. 2000) (Peck, M.J.) (dismissing habeas petition without prejudice because petitioner failed to exhaust available state remedies under § 2254(b)(1)(a) and directing petitioner to file a writ of coram nobis in the Appellate Division, First Department, to bring ineffective assistance of counsel claim for his counsel's failure to file a timely notice of appeal).

Had petitioner brought his ineffective assistance of counsel claim in a habeas petition in federal court before filing the coram nobis application in the Appellate Division, it would likely have been dismissed on the ground that he had failed to exhaust available state remedies under the reasoning set forth in Dumas, Boynton and Rodriguez, supra. In both Dumas and Rodriguez, the petitions were dismissed for failure to exhaust state remedies when the prisoners had not filed coram nobis applications in the Appellate Division, even though - like petitioner - both had previously filed motions, which were denied, for permission to file late notices of appeal under

48

CPL § 460.30(1). <u>See</u> <u>Dumas</u>, 105 F. Supp. at 74; <u>Rodriquez</u>, 2000 WL 962748, at *2-3.

The <u>coram</u> <u>nobis</u> petition thus served to toll the limitations period for 388 days, from when it was filed January 23, 2003 until decided on February 14, 2005. Adding these tolled days to the 329 days tolled during the pendency of the "converted" § 460.30 application totals 717 days tolled. As explained in Part 2(c), Perich was required to toll the statute for 647 days, i.e., the number of days that elapsed between when the statute of limitations period was triggered on August 23, 2002, until the instant petition was filed on May 31, 2005. Having tolled the limitations period for 717 days, Perich's application was timely by 70 days. Calculated another way, the statute "ran" for 189 days between the date the Court of Appeals denied leave to appeal the "converted" § 460.30 motion until the filing of the <u>coram</u> <u>nobis</u> petition, and "ran" an additional 106 days between the date the Appellate Division denied the <u>coram</u> <u>nobis</u> petition until the instant federal habeas petition was filed on May 31, 2005. Thus, only 295 days ran under the statute, meaning that Perich's petition was timely filed with 70 days to spare.

## Conclusion

For the foregoing reasons, respondent's motion to dismiss is denied.  Respondent has sixty (60) days to respond to the merits of Perich's petition.

Dated:  Brooklyn, New York
        August 23, 2007

                        SO ORDERED:


                        _____/s/_____
                        David G. Trager
                        United States District Judge